**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:26-cr-9 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| ANTONIO TRIPLETT, | : | |
| | : | |
| Defendant. | : | |

## OPINION & ORDER

This matter comes before the Court on Defendant Antonio Triplett's *pro se* Motion to Substitute Counsel (ECF No. 65) and Defense Counsel Meade's Second Motion to Withdraw (ECF No. 69).  For the following reasons, both Motions are **DENIED**.

## I.    BACKGROUND

On January 15, 2026, a grand jury charged Triplett with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), as well as possession of a firearm as a person convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(8).  (ECF No. 5 at 1–2).  Triplett is indigent and is represented by court-appointed counsel.  (ECF No. 8).

In April 2026, Triplett filed several *pro se* motions to represent himself (ECF Nos. 27; 28), and his defense attorney Meade sought to withdraw, representing that there had been "an irreparable breakdown of the attorney-client relationship."  (ECF No. 34 at 1).  The Government requested a *Lafler* hearing to ascertain whether Triplett intended to reject an offered plea deal.  (ECF No. 33). The Court held a joint *Lafler* and Status Hearing on May 19, 2026, where Triplett confirmed he rejected the terms of the plea agreement, and both Triplett and Meade addressed the issues regarding

1

representation.  (ECF Nos. 39; 41).  The Status Hearing was continued to May 26, and at that time, Triplett advised the Court that he wished to withdraw his pending motions to represent himself *pro se*, and Meade indicated that he wished to withdraw his motion to withdraw.  (ECF No. 44 at 1).

Thereafter, Triplett submitted a Motion to Suppress through counsel, seeking to suppress evidence obtained by the police during a search of a house.  (ECF No. 46).  The Court held a suppression hearing on June 9, where Meade argued on behalf of Triplett.  At the conclusion of the hearing, the Court indicated that it would study the video evidence further, but it did not appear that Triplett had a basis for suppression.  A few days after the hearing, Meade proceeded to file several motions on Triplett's behalf, including motions *in limine*, from June 11 through 15.  (ECF Nos. 56; 57; 63).

But though the prior schism between Triplett and Meade had been mended, that mend seems to have ultimately been temporary.  On June 17, Triplett moved *pro se* to substitute his court-appointed defense counsel.  (ECF No. 65).  A week later, Meade filed a Second Motion to Withdraw. (ECF No. 69).  The Court considers each Motion in turn.

## II.    LAW AND ANALYSIS

### A.  Defendant Triplett's *Pro Se* Motion to Substitute Counsel

First, Triplett requests a new attorney be appointed to defend him.  He argues that substitution is warranted under the Prison Rape Elimination Act because his counsel "made a comment using his shoe size in reference to the size of his penis" while they were meeting at the Fairfield County Jail.  (ECF No. 65 at 1).  To Triplett, this comment was "unprofessional" and unrelated to the case.  (*Id.*).  He notes that he filed a complaint with the jail and is "seeking mental health counseling," claiming that his counsel's "conduct . . . has put [him] in deep depression" and that he intends to "file charges" and "a complaint with the Bar Association."  (*Id.*).  Triplett

concludes that his attorney now has a conflict of interest in representing him, and that the attorney-client relationship is "irretrievably broken." (*Id.*).

The Prison Rape Elimination Act, 34 U.S.C. § 30301 *et seq.* (previously codified at 42 U.S.C. § 15601 *et seq.*) was created by Congress "with the purpose of implementing standards and policies to prevent prison rape and to 'protect the Eighth Amendment rights of Federal, State, and local prisoners.'" *Does 8–10 v. Snyder*, 945 F.3d 951, 955–56 (6th Cir. 2019) (quoting 34 U.S.C. § 30302).  It does not, however, create a private right of action or "confer upon inmates any extra rights outside of the normal prison grievance system." *Fisher v. Fed. Bureau of Prisons*, 484 F. Supp. 3d 521, 537–38 (N.D. Ohio 2020) (collecting cases; cleaned up); *accord McLaurin v. Kabat*, 2023 WL 5939820, at *5 (E.D. Mich. Sept. 12, 2023).  Any bearing that the PREA may have on Triplett's jail grievance appears to be an administrative matter for his jail.  Triplett's *pro se* Motion fails as a threshold matter because the PREA does not provide a basis for his counsel substitution request.

Aside from the flawed PREA premise, Triplett's *pro se* Motion still facially fails because it is baseless, conclusory, and without merit.  The Court will assume, for the purposes of deciding Triplett's *pro se* Motion, that the one fact Triplett advances is true and Meade "made a comment using his shoe size in reference to the size of his penis." (ECF No. 65 at 1).  Triplett claims that he was abused as a child and that the statement made him depressed.  The Court will credit both those statements for the purposes of this Motion, but even still, Triplett's singular paragraph does not explain why an unprofessional and irrelevant comment could be considered sexual harassment, why he no longer feels safe around Meade, or why his trust in his Meade is forever broken.

Triplett cannot escape the general rule that the mere existence of a criminal defendant's "grievances" (including state bar association grievances) against his lawyer is not enough to

generate a conflict of interest. *United States v. Gandy*, 926 F.3d 248, 260–61 (6th Cir. 2019).  As the Sixth Circuit has observed, many such grievances appear "frivolous" or "contrived by the defendants in order to avoid trial," and are meritless in considering motions to substitute new counsel. *Id.*  To show an alleged conflict of interest, the criminal defendant "must point to specific instances in the record and make a factual showing that the attorney and the defendant have inconsistent interests." *Id.* at 261.  The defendant must "show that his attorney had competing obligations and chose to favor one interest over another, to the detriment of the representation of the defendant." *Id.*  The defendant "must show that his attorney's performance was compromised as a result of the competing obligation." *Id.*  Triplett's perfunctory motion fails at each step.  He does not establish any reason to believe that his counsel's performance was compromised by the offense he took.  Even if his PREA grievance and proposed state bar complaint have merit, they do "not create a conflict of interest because the grievances [do] not establish any competing obligations for the attorneys." *Id.*

But there is another, much more plausible explanation for Triplett's Motion.  At the Court's Status Hearing held on May 19 and 26, Triplett criticized Meade and sought to proceed *pro se*, claiming that he has extensive experience as a criminal defendant and has successfully defended himself before.  The Court spent an hour at that Status Hearing helping Triplett and his counsel work through their impasse.  Throughout that hearing, Triplett had manifest difficultly moderating himself.  He expressed frustration both with the Court and his attorney.  He repeatedly shook his head, muttered, and interrupted while his counsel spoke.  He also repeatedly interrupted and spoke over the Court.  To his credit, Triplett later apologized for his conduct, explaining that jail frustrates him as his time is spent in lockdown.  On May 26, Triplett and his attorney advised the Court that they wished to withdraw those motions and continue with their attorney-client relationship.  (ECF

4

No. 44 at 1).  The Court then held a Suppression Hearing on June 9, 2026.  (ECF No. 55).  At the end of that hearing, the Court indicated that it would likely deny Triplett's Motion to Suppress via a written opinion.

Now, faced with the prospect of looming trial, Triplett again attacks his court-appointed counsel, this time arguing that the attorney-client relationship has broken down due to a sexually suggestive verbal comment that his attorney made when visiting him at the jail.  The Court is not at all convinced that Triplett's *pro se* Motion is genuine.  Rather, it appears to be yet another attempt at gamesmanship and delay—a mere tactic to slow down the fast-approaching trial date.  *See United States v. Powell*, 847 F.3d 760, 774–75 (6th Cir. 2017).  The trial judge is "in a unique position" to "distinguish between a manipulative effort" by Triplett to hijack its proceedings "and a sincere desire to dispense with the benefits of counsel."  *Id.* at 775 (bracketed text, internal quotation marks, and citations omitted).  Triplett's demeanor, his bare-bones *pro se* Motion (at least the tenth he has filed in this case), and his claim to have had extensive experience with the criminal justice system make his request smack of a manipulative effort, and not a sincere request for a new attorney.  All the Court's experience tells it that Triplett is a shrewd, "sharp fellow," seeking to do whatever he can to delay trial now that he is faced with the possibility of unfavorable evidence coming in.  *Id.* at 776–77.

In evaluating Triplett's Motion to Substitute Counsel, the Court considers:  (1) "the timeliness of the motion"; (2) the nature of the issues raised, "inquir[ing] into the matter"; (3) "the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense"; and (4) "balancing the factors with the public's interest in the prompt and efficient administration of justice."  *United States v. Higgins*,

2023 WL 6536752, at *8 (6th Cir. Oct. 6, 2023) (quoting *United States v. Steele*, 919 F.3d 965, 973 (6th Cir. 2019)).

In a vacuum, Triplett's Motion might be timely, as it was made three weeks before trial and only a few days after the incident Triplett claims precipitated it.  Here, however, the Court is deeply skeptical of the timing.  *See Powell*, 847 F.3d at 776.  Triplett is being held in jail, and his attorney visit was shortly after the Court indicated at the Suppression Hearing that it likely would not grant his Motion to Suppress.  Thus, Triplett's Motion appears strategically timed to throw the trial schedule in disarray.  Although timely, the timing of Triplett's Motion is highly suspect.  This factor weighs against granting the relief he seeks.

Triplett's Motion fails on every other factor, too.  Triplett fails even to facially demonstrate a breakdown of the attorney-client relationship.  *See id.* at *8–9.  Assuming everything Triplett says is true, at most the issue he raises is that his attorney offended him with what may well have been a truly inappropriate statement, an attempt at humor, an off-color remark, or a complete misunderstanding or misinterpretation on Triplett's part.  At any rate, this is insufficient for Triplett to obtain new counsel.  And the record reflects that Triplett's counsel has been zealously representing his client, filing motions on his behalf in advance of trial.  (*See* ECF Nos. 56; 57; 63).  Moreover, the record does *not* show a lack of communication between Triplett and his attorney—in fact, Triplett's Motion itself evidences that he has still been in communication with his attorney.  *Cf. United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005) ("The record indicates that [the defendant] and his counsel continued to communicate.").  Finally, the public interest in proceeding to trial, which is roughly two weeks away, outweighs any subjective concerns Triplett might hold.  *Higgins*, 2023 WL 6536752, at *9–10.

Triplett's right to counsel as an indigent litigant does not go so far as to give him "a right to have a particular attorney represent him, and he must show good cause to warrant a substitution of counsel." *United States v. Johnson*, 612 F. App'x 345, 349 (6th Cir. 2015). He has failed to do so, and the Court will not indulge his attempts to manufacture eleventh-hour issues to delay trial or "create the need for substitute counsel—or force his attorney's hand in moving to withdraw—by thwarting his own attorney-client relationship." *Higgins*, 2023 WL 6536752, at *9. Paring away Triplett's conclusory assertions about the death of the attorney-client relationship but taking his factual report of his attorney Meade's statement as true, his attorney may have made a crude and inappropriate statement, may have attempted a poor joke, or may have said something else entirely and been misunderstood. Even in the worst scenario, where Meade made a crude statement, Triplett lacks good cause to replace him. If anything, Triplett first submitting a PREA grievance with his jail *before* seeking to fire his attorney further suggests that he is simply creating a pretextual reason to fire his attorney.

Based on the record before the Court, this appears to be a situation of Triplett's "own making," and "changing counsel at such a late stage would result in significant delay and additional expense," while also hampering an effective defense by necessitating that a new attorney be brought up to speed in the case. *Henness v. Bagley*, 644 F.3d 308, 321–22 (6th Cir. 2011). As the Court observed during the Status Hearing, Meade has every incentive to achieve a favorable result for Triplett. Defendant Triplett has not shown good cause to substitute counsel.

### B. Defense Counsel Meade's Second Motion to Withdraw

Defense Counsel Meade seeks to withdraw as court-appointed counsel for a second time. He claims again that the attorney-client relationship has suffered yet another "irreparable breakdown," this time with a "per se conflict of interest." (ECF No. 69 at 1). He represents that

7

Triplett did file a PREA complaint with the Fairfield County Jail against him, and posits that he has a conflict of interest in representing Triplett because there is "a substantial risk that [his] ability to consider, recommend, or carry out an appropriate course of action for [his] client will be materially limited by . . . the lawyer's own personal interests." (*Id.* at 1–2) (citing Ohio R. Prof. Conduct 1.7).

Meade's Second Motion to Withdraw fails for at least three reasons, two of which are procedural. First, it is a rule of the U.S. District Court for the Southern District of Ohio that all attorneys of record in criminal cases "may not withdraw . . . without first providing written notice to the client and all other parties and obtaining leave of Court." S.D. Ohio Crim. R. 83.4(a). But Meade does not represent that he provided written notice to Triplett that he would withdraw. Second, Under Ohio's Rules of Professional Conduct,[1] appointed counsel in criminal cases have an independent duty to provide their clients with a "full explanation of the consequences" when their clients seek a discharge. Ohio R. Prof. Conduct 1.16 cmt. 5. Triplett's request to substitute counsel informs Meade's request to withdraw, (ECF No. 69 at 1), but Meade does not represent that he provided a full explanation of the consequences of his withdrawal to his client. The apparent failure of Meade to take either of these required steps dooms his Motion to Withdraw. *E.g.*, *United States v. Rowe*, 2025 WL 3458758, at *1 (S.D. Ohio Dec. 2, 2025) (Marbley, J.).

The third reason Meade's motion fails is substantive, and is the most important one. Under Ohio's Rules of Professional Conduct, an attorney's "continuation of representation of a client creates a conflict of interest if . . . there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by . . . the lawyer's own personal interests." Ohio R. Prof. Conduct 1.7(a)(2) (emphasis in original).

---

[1] The U.S. District Court for the Southern District of Ohio incorporates the standards of professional conduct adopted by the Ohio Supreme Court, which are the State of Ohio's Rules of Professional Conduct. *See* S.D. Ohio R. Disciplinary Enforcement IV(B).

Meade has not shown a substantial risk that Triplett's PREA grievance—submitted against him for statements he allegedly made while visiting Triplett in jail—will impact his ability to represent his client in this case. He suggests that the PREA grievance places him in the position of defending against Triplett's accusations while also trying to zealously represent Triplett, and that this is an "irreconcilable divide." (ECF No. 69 at 2). But Triplett and his counsel have fallen out of love before, only to find their respective ways back to one another. If the attorney-client relationship truly is irreconcilable this time, Meade has not shown why. The PREA grievance concerns a remark Meade allegedly made visiting Triplett in jail. But that remark does not appear to have anything to do with this case. *Cf.* Ohio R. Prof. Conduct 1.7 cmt. 20 (providing examples where an attorney's personal interest in the matter concerning his client may render him "unable to give [his] client detached advice in regard to the same").

The Sixth Circuit's opinion in *United States v. Gandy* applies with equal force to Meade's motion. On this record, Meade's claims of an irreconcilable divide appear to be, at best, "hyperbole." *Gandy*, 926 F.3d at 261. If a criminal defendant could replace his counsel and delay trial merely by submitting a grievance or complaint against that attorney, "criminal defendants could"—and would—"habitually abuse this rule," and the criminal dockets in the nation's courts would grind to a halt. *Id.* "Any defendant in a criminal case would be able to manufacture a frivolous argument against his or her attorney, file a state-bar grievance, and have the district court submit new counsel." *Id.* Even assuming Triplett's grievances against Meade are correct, "they do not create a conflict of interest because the grievances [do] not establish any competing obligations for [counsel]." *Id.* at 261. Meade can defend his comment while still providing Triplett with an effective criminal defense, because an effective criminal defense is not impacted by that comment. Taken as a whole, the record does not reflect a real breakdown of the attorney-client relationship.

9

In sum, Defense Counsel Meade's Motion to Withdraw is both procedurally and substantively insufficient.  As the Court has already explained, the PREA grievance appears to be little more than Triplett's attempt to halt a looming trial.  The Court is not satisfied that it is a reason sufficient for Triplett to substitute counsel, and Meade has not explained how any need to defend against the PREA grievance in the future compromises his ability to represent Triplett at trial now.  The Court has no reason to doubt Meade's capacity in this matter based on his conduct at the *Lafler* and Status Hearings or at the Suppression Hearing, where he zealously represented his client.

## III.    CONCLUSION

For the foregoing reasons, Defendant Triplett's *pro se* Motion to Substitute Counsel (ECF No. 65) and Defense Counsel Meade's Second Motion to Withdraw (ECF No. 69) are both **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  July 1, 2026**

10