**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:26-cr-9** |
| | : | |
| v. | : | **Judge Algenon L. Marbley** |
| | : | |
| ANTONIO TRIPLETT, | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter comes before the Court on Defendant Antonio Triplett's Motions *in Limine* (ECF Nos. 56; 57; 63; 73) and the Government's response requesting that Triplett have leg restraints during trial. (ECF No. 68). For the following reasons, Defendant's Motions are **GRANTED in part, DENIED in part, and RESERVED in part**. The Government's request that Triplett be equipped with leg restraints is **GRANTED in part**.

## I. BACKGROUND

### A. Factual Background

The factual background of this case is summarized based on the record and evidence before this Court at a suppression hearing. On the evening of July 11, 2025, Haley Mitchell called 911 to report that armed men had come into her home and threatened to shoot her when she told them to leave. Columbus police were simultaneously dispatched to meet her in a parking lot near a public park and to respond to the home and investigate whether it was occupied. The police investigation was captured on the video of officer-worn body cameras.

Ms. Mitchell provided the following account to police. She lived at her home alone, but invited two friends to visit her. Around July 10, 2025, those two friends allowed two men to enter

1

the home, and these men were armed with guns. One of these men was Antonio Triplett. Triplett and his compatriot brought a Hispanic kid called "Amigo" into the home, and they proceeded to sodomize Amigo with the ends of a firearm for stealing. Ms. Mitchell fled her home in fear, but later returned and ordered Triplett to leave. Triplett then threatened her with a firearm.

When police responded to the home, Triplett met them at the front door, claiming to live there. Those police officers ordered the occupants out of the house and detained them. Then, Ms. Mitchell returned to her home and authorized police to search it after learning they had not found a firearm. The police recovered a handgun with a thirty-round magazine tucked in between an air mattress and a futon in the living room. They obtained a search warrant for Triplett's DNA and determined it was present on that handgun. *United States v. Triplett*, 2026 WL 1875512, at *1–2 (S.D. Ohio June 30, 2026) (Marbley, J.) (ECF No. 74).

### B. Procedural Background

On January 15, 2026, a grand jury charged Triplett with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), as well as possession of a firearm as a person convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(8). (ECF No. 5 at 1–2). This case is set for trial beginning on July 6, 2026. On June 30, 2026, this Court denied Triplett's Motion to Suppress evidence resulting from the police search of Mitchell's home, allowing the Government to introduce the firearm as well as DNA and forensic evidence deriving from the firearm. *Triplett*, 2026 WL 1875512, at *6.

Now, Triplett has submitted several Motions *in Limine*. He seeks to appear at trial unshackled and in civilian clothing, to exclude statements made by Haley Mitchell as hearsay, to exclude other-acts evidence regarding the Amigo incident, and to receive jury questionnaires in advance of the holiday weekend. The Government responded only to indicate that it does not oppose

2

Triplett's request to appear in civilian clothing, but requests that he be outfitted with leg restraints during trial.

This Court held a hearing in lieu of a final pretrial conference. At that hearing, the Government offered the testimony of Deputy United States Marshal Tracy Clifford. Deputy Marshal Clifford testified that the Marshals would prefer that Triplett be restrained for safety reasons, explaining that the Marshals had concerns about his hostile attitude and body language. She also testified that they could secure Triplett's legs through leg shackles, muffled with cloth and duct tape to prevent sound, or with a "bandit" device—a sleeve placed on the limb that delivers an electric shock. The bandit device would require Triplett to be medically cleared.

## II.   STANDARD OF REVIEW

### A. Motions *in Limine*

The purpose of a motion *in limine* is "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). Whether to grant a motion *in limine* falls within the sound discretion of the trial court. *Delay v. Rosenthal Collins Grp., LLC*, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012) (citing *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012)). The guiding principle is "to ensure evenhanded and expeditious management of trials." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

Courts "should exclude evidence on a motion in *limine* only when that evidence is determined to be clearly inadmissible on all potential grounds." *Delay*, 2012 WL 5878873, at *2 (citing *Ind. Ins. Co.*, 326 F. Supp. 2d at 846). The burden rests on the movant. *Morrison v. Stephenson*, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy

and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. Furthermore, "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Morrison*, 2008 WL 343176, at *1 ("Courts . . . are generally reluctant to grant broad exclusions of evidence *in limine*, because a court is almost always better situated during the actual trial to assess the value and utility of evidence." (internal quotation marks omitted)).

Rulings on motions *in limine* are "no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)). Thus, the Court "may change its ruling at trial for whatever reasons it deems appropriate." *Id.*

### B. Applicable Rules of Evidence

Many motions *in limine* address evidentiary issues, and the applicable Federal Rules of Evidence are instructive. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant, and therefore generally admissible, so long as it "has any tendency to make a fact more or less probable," and so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (citations omitted). "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant." *Id.* at 401. Additionally, evidence can be relevant even if it does not relate to a fact in dispute, provided the evidence supplies background information about a party or issue. *See* Fed. R. Evid. 401 Advisory Committee's Notes ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.").

Assuming evidence is relevant, Rule 403 nonetheless grants trial courts discretion to exclude that evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Generally, hearsay is inadmissible, unless an exception to the hearsay rule applies. *See* Fed. R. Evid. 801, 802. Evidence that would constitute hearsay for one use may be considered excluded from the definition of hearsay altogether in other instances. For example, a statement by a party opponent is considered "not hearsay," but that same statement offered by the party that made the statement fits squarely within the general prohibition. *See* Fed. R. Evid. 801(c), (d).

Additionally, relevant evidence of character, character trait, or other acts is likewise inadmissible under Rule 404 "to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Finally, Rule 405 permits the introduction of certain character evidence through limited means, in special circumstances. Fed. R. Evid. 405(a), 405(b). Typically, "when evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). Where a relevant character trait is at issue—"when a person's character or character trait is an essential element of a charge, claim, or defense"—specific instances of relevant conduct may be introduced. Fed. R. Evid. 405(b).

It is within this framework that this Court considers Triplett's Motions.

## III.    LAW AND ANALYSIS

Triplett submits several Motions *in Limine*, seeking to appear at trial without the indicia of state confinement (ECF No. 56), to exclude statements as hearsay (ECF No. 57), to exclude other-acts evidence, (ECF No. 63), and to receive jury questionnaires. (ECF No. 73). This Court evaluates each Motion in turn.

### A.  Motion to Appear in Non-Jail Clothing and Unshackled for Trial

Triplett seeks to avoid prejudice that could result if he appears before the jury in the indicia of state confinement—jail clothing and physical restraints. (ECF No. 56). The Government responded only to indicate that it does not oppose Triplett's request to appear in civilian clothing, but requests that he "be outfitted with leg shackles during trial." (ECF No. 68 at 1).

First, "an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption [of innocence] so basic to the adversary system." *Estelle v. Williams*, 425 U.S. 501, 504 (1976). The parties are aligned that Triplett should be permitted to appear in civilian clothing, and this Court agrees. Any other outcome could result in manifest prejudice. Triplett's request to appear in civilian clothes is **GRANTED**.

Second, as a general rule, "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). Here, the Government has shown—via Deputy Marshal Clifford's testimony—the existence of security concerns that necessitate physical restraint based on Triplett's conduct and behavior. And this Court has already witnessed some of Triplett's prior conduct and behavior at prior hearings raising these concerns. Therefore, the Government has justified the use of physical restraints on Triplett's legs at trial for security concerns. *Cf. Seymore v. Farmer* 2022 WL

6

18027629, at *2–3 (E.D. Mich. Dec. 29, 2022) (ordering no handcuffs but allowing leg restraints). The Government may restrain Triplett's legs, given that they represent that leg shackles can be muted by cloth and tape, covered by Triplett's pant legs, and obscured from the jury's view through skirts on the table and bannisters. *See Meadows v. Coppick*, 2025 WL 2531421, at *2 (S.D. Ohio Sept. 3, 2025) (Hopkins, J.) (if physical restraints are used, they should not be visible or audible).

Triplett's request to appear unshackled is **DENIED**, and the Government's request to outfit him with leg restraints is **GRANTED**, consistent with this Order. The Government may use leg shackles modified to eliminate sound. But in light of the holiday weekend and the uncertainty whether Triplett can be medically cleared in time for trial to begin on July 6, 2026, the Government may not utilize the bandit sleeve restraint. Additionally, Triplett's final pretrial conference request to sit at the side portion of the L-shaped defense table at trial to obscure his legs from the jury's view is **GRANTED**.

### B. Motion to Exclude Statements Made by Haley Mitchell As Hearsay

Next, Triplett seeks to exclude statements made by Haley Mitchell as hearsay under Fed. R. Evid. 801(c) and Fed. R. Evid. 802. (ECF No. 57). Ms. Mitchell's 911 call initiated the police investigation of Triplett, and she made several statements to police that directly connect Triplett to a firearm. The Government has indicated that it can tie the firearm to Triplett via DNA evidence, (*see* ECF No. 58), and does not seek to call Ms. Mitchell as a witness. (*See* ECF No. 61). Triplett argues that Ms. Mitchell's statements to police are testimonial in nature and would be offered in this case to prove the truth of the matter asserted. Therefore, he seeks to exclude them as inadmissible hearsay. (ECF No. 57 at 2–4).

The Sixth Amendment's Confrontation Clause protects a criminal defendant's "right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. When the prosecution's

witness cannot testify and has not been cross-examined, "the Confrontation Clause forbids entry of the witness's statements that are:  (1) testimonial and (2) hearsay." *United States v. Burrell*, 114 F.4th 537, 555 (6th Cir. 2024) (quoting *United States v. Harrison*, 54 F.4th 884, 887 (6th Cir. 2022)). Ms. Mitchell's statements to the police are both testimonial in nature and hearsay.

First, Ms. Mitchell's statements to police regarding Triplett's alleged possession of a firearm were testimonial because their "purpose [was] to be used against the defendant." *Harrison*, 54 F.4th at 887; *Crawford v. Washington*, 541 U.S. 36, 51 (2004) ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.").

Second, her statements are hearsay.  Hearsay, or an out-of-court statement offered to prove the truth of the matter asserted, *see Smith v. Arizona*, 602 U.S. 779, 785 (2024), is generally not admissible in federal court unless provided for by federal statute, the Federal Rules of Evidence, or other rules prescribed the United States Supreme Court. Fed. R. Evid. 802.  The rule against hearsay "is premised on the theory that out-of-court statements are subject to particular hazards.  The declarant might by lying; [she] might have misperceived the events which [she] relates; [she] might have faulty memory; [her] words might be misunderstood or taken out of context by the listener." *Williamson v. United States*, 512 U.S. 594, 598 (1994).   Because Ms. Mitchell's statements were

8

made out of court and would be offered to prove the truth of the matters asserted, they are hearsay. Fed. R. Evid. 801(c).

Thus, Ms. Mitchell's out-of-court statements cannot be introduced or used by the Government against Triplett if she is not called to testify. Triplett's request to exclude them is **GRANTED**.

### C. Motion to Exclude Other-Acts Evidence

Triplett also seeks to exclude other-acts evidence of the incident involving Amigo. (ECF No. 63). He argues that the allegations, relayed by Ms. Mitchell to police, that Triplett "sodomized" Amigo with a firearm would concern other crimes, wrongs, or acts not charged in the indictment and not necessary to prove that Triplett ""knowingly possessed the charged firearm." (ECF No. 63 at 2 (citing Fed. R. Evid. 404(b)(1)).

Rule 404(b)(1) prohibits the introduction of "[e]vidence of any *other* crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1) (emphasis added). It is not at all clear that Fed. R. Evid. 404(b)(1) applies in this circumstance. Here, Triplett is charged with possession of a firearm, and the supposed Amigo incident—whereby Triplett allegedly sodomized Amigo *with a firearm*—certainly may bear on the charges of possession. Thus, Triplett has not convincingly shown that Rule 404(b)(1)'s prohibition on the introduction of evidence of other crimes to prove a defendant's character would bar the introduction of this evidence here.

For similar reasons, evidence surrounding the alleged Amigo incident would appear to be relevant to this case, as it could connect Triplett to possession of a firearm. *See* Fed. R. Evid. 401. Nevertheless, any probative value of potential evidence must still be weighed against the prejudicial effect it may impart. *See United States v. Conklin*, 2026 WL 1155918, at *7–8 (S.D. Ohio Apr. 29,

2026) (Marbley, J.) (evaluating Rule 404(b) and balancing probative value against prejudicial effect). This Court finds that, at this preliminary stage, that any evidence surrounding the alleged Amigo incident appears to raise an unacceptable risk of "unfair prejudice" and "confusing the issues." Fed. R. Evid. 403.

Triplett's alleged conduct in the Amigo incident could encompass other uncharged crimes. The risk of confusing or prejudicing the jury against Triplett is high. Therefore, Triplett's request to exclude evidence of the Amigo incident is **GRANTED** insofar as the Government may not elicit, reference, argue, or allude to the alleged Amigo incident without first notifying and obtaining leave of this Court. This Court **RESERVES** its ruling on this issue in all other respects. *See Conklin*, 2026 WL 1155918 at *9–10 (reserving a ruling on certain evidence proffered by the Government pending a foundation for admission). Should the Government wish to lay a foundation for proffered evidence of the Amigo incident, and then explain why Rule 403 would not preclude introduction of that evidence at trial, it may seek leave of this Court.

### D. Motion for Jury Questionnaires

Finally, Triplett requested that the jury questionnaires be provided at the final pretrial conference on July 1, 2026, in light of the July 4 holiday weekend. (ECF No. 73). This Court orally granted that request at the final pretrial conference and is informed that the parties received the jury questionnaires immediately following the final pretrial conference. For the reasons set forth on the record at the final pretrial conference held on July 1, 2026, Triplett's request for jury questionnaires is **GRANTED**.

### IV.  CONCLUSION

For the foregoing reasons, Defendant Triplett's Motion to appear unshackled and in non-jail clothing (ECF No. 56) is **GRANTED** insofar as he may appear in civilian clothing and **DENIED**

insofar as he requests to appear unshackled.  The Government's request to restrain Triplett's legs with shackles modified to eliminate sound is **GRANTED**.  Triplett's request to sit at the side portion of the L-shaped defense table is **GRANTED**.

Triplett's Motion to Exclude Haley Mitchell's statements as hearsay (ECF No. 57) is **GRANTED**; the Government may not use Ms. Mitchell's out-of-court statements unless she is called to testify.

Triplett's Motion to Exclude other-acts evidence pursuant to Rule 404(b)(1) is **GRANTED** insofar as the Government must first notify and obtain leave before introducing evidence related to the alleged Amigo incident.  This Court **RESERVES** its ruling on this issue in all other respects.

Finally, Triplett's Motion for Jury Questionnaires is **GRANTED** for the reasons set forth on the record at the final pretrial conference.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  July 2, 2026**

11